[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The factual circumstances which resulted in this presentment may be summarized as follows:
For some time prior to June 30, 1989 the respondent had represented the complainant, Vito DiLustro. Prior to that date the complainant held a mortgage on property located at 8 Svea Avenue in Branford. John Horvat was the owner-mortgagor of that property and in June of 1989 he planned to sell the property and pay off the mortgage. With the closing date approaching, the mortgagor's attorney, Stephen Hanchuruck, attempted to contact the complainant for instructions as to the balance owed and the securing of a release of mortgage.
He did not reach the complainant who was visiting in Italy but spoke to his son, John DiLustro. The latter referred him to the respondent who was then called by the complainant, and furnished with the mortgage balance. Attorney Hanchuruck then forwarded a check in the amount of $94,365.59 to the respondent in full payment of the mortgage and requested a release of mortgage. The respondent then wrote to Mr. Hanchuruck acknowledging receipt of the payment and agreeing to hold the funds in escrow pending the execution of a release by the complainant.
As to subsequent events, the respondent and the claimant are in disagreement. There is no question, however, that the bulk of the money held by the respondent was invested in second mortgages through a company owned and operated by the respondent. Regardless of what went on between complainant and respondent, the respondent did not fulfill his obligation to Attorney Hanchuruck in that the funds were not held in escrow pending the receipt of a mortgage release from the complainant, the mortgagee. (In fact, Mr. Horvat was obliged to defend against a foreclosure action brought by the complainant who took the position that the mortgage was overdue and that this respondent had no authority to collect the funds).
The complainant stated that he never spoke to the respondent about the closing or the payout, never authorized him to collect the money, let alone re-invest it and had difficulty reaching the respondent to re-claim his money. He was adamant in his position that the respondent was not authorized to act in his behalf with respect to the mortgage closing and that he did not authorize the respondent to invest his money.
The respondent, on the other hand, testified that he spoke CT Page 10206 to the complainant before the closing and that was when he learned that the payoff figure was some $30,000.00 less than the figure Attorney Hanchuruck had given him. It is also his claim that it was in this long distance phone conversation that he discussed investing the mortgage proceeds and obtained the complainant's enthusiastic approval. The respondent apparently equates investing these funds with his agreement to hold them in escrow.
After evaluating the evidence presented in this matter, the court finds there is clear and convincing evidence from which to conclude that the respondent was acting as attorney for the complainant in the course of the closing transaction described above. It necessarily follows that he owed a duty to Attorney Hanchuruck to observe the conditions under which he accepted the payoff funds. Investing them, with or without his client's permission, is not a proper escrow arrangement.
As for the question of the investment of the funds, the court cannot conclude that there is clear and convincing evidence that this was done without the client's permission. However, it is undisputed that no writing was prepared containing the investment terms, and the complainant's written consent to the proposal was not obtained.
Proceeding then on the premise that this respondent was acting as an attorney for the respondent when he obtained the funds and that he had the respondent's permission to invest them, the court finds that the respondent is guilty of the following violations of the Rules of Professional conduct:
1. By informing Attorney Hanchuruck by letter of July 5, 1989 that Mr. DiLustro's mortgage funds would be held in escrow pending a release, and then not doing so, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Rule 8.4(c) of the Rules of Professional Conduct. 2. By entering into a business transaction with the respondent, his client, i.e., investing the client's funds in his own mortgage business, the respondent violated Rule 1.8(a)(1)(3):
 Rule 1.8 Conflict of Interest: Prohibited Transactions (a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless: (1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client; CT Page 10207 (2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and (3) The client consents in writing thereto.
The violation of Rule 8.4(c) is most serious. It strikes at the very essence of the practice of law and threatens one of the basic tenets of the profession. If one lawyer cannot rely on the written promise of another, we are not a profession of lawyers. For this violation, the respondent is suspended from practice for the period of one year, starting February 1, 1992.
For the violation of Rule 1.8, the respondent is reprimanded.
ANTHONY V. DeMAYO, Judge